FREDERICK 'H. FISHER *vs.* THE CROSBY MANUFAC-
TURING COMPANY.

First Judicial District, Hartford, October Term, 1907.

BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

During the temporary stoppage of the machinery in the defendant's
mill for the purpose of repairing the fly-wheel belt, the plaintiff,
in the line of his duty as assistant superintendent, went to the
wheel-pit to see if it was free from obstructions, and while looking
into the pit was struck and injured by the crank-shaft of the engine,
which was started up without notice or warning· to him. *Held*
that a charge which virtually authorized the jury to render a ver-
dict for the plaintiff upon these facts alone, and ignored the claim
of the defendant, supported by the evidence, that the defendant's
other employees did not know, and had no reasonable cause to
suppose, that the plaintiff was in any position of danger when they
started the engine, was inadequate and misleading; since it might
well have caused the jury to believe that the foundation of the
defendant's liability was its failure to give warning or notice to
the plaintiff, rather than the existence and proof of its negligent
conduct under all the circumstances of the case.

Argued October 1st—decided October 22d, 1907.

ACTION to recover damages for personal injuries alleged
to have been caused by the defendant's negligence, brought
to the Superior Court in Hartford County and tried to the
jury before *George W. Wheeler, J.;* verdict and judgment
for the plaintiff for $7,294 damages, and appeal by the de-
fendant. *Error and cause remanded.*

· The defendant is a corporation located·in East Glaston-
bury, engaged in the manufacture of woolen goods. The
machinery of the mill is run by a double steam-engine of
120 horse-power, consisting of two engines parallel with
each other running east and west. Between the·two en-
gines is a large fly-wheel which runs in a pit which is about
three feet deep below the bottom of the fly-wheel; over
this fly-wheel runs a belt by means of which the machinery
of the mill was kept in motion; the two ends of the belt
are held together by leather lacing. On the morning of

August 10th, 1906, this lacing broke, thereby stopping all the machinery.

It was the duty of those employed in operating the mill to renew the lacing of the belt and get it into proper position as quickly as possible, so that the engine might be started and the operation of the mill go on. In the breaking of the belt there was danger that there would be debris, pieces of the floor, etc., in the wheel-pit, caused by such breaking, and the work of repair would not be fully accomplished, so that the engine might be started and the operation of the mill go on, until such debris as might be in the wheel-pit was removed; and it was the duty of one going to see if everything was clear to look out for such pieces of the floor in the pit. Shortly after the belt broke, the plaintiff, Hewson, the engineer, Henry Fisher, the master-mechanic and father of the plaintiff, Kessler, the superintendent of the mill, and several workmen were in the engine-room engaged in the work of repair. A. O. Crosby, who was the secretary, treasurer and general-manager of the defendant corporation, was in the engine-room during a part of the time the repairs were going on, and was present when the injury to the plaintiff occurred. The plaintiff was employed as a general utility man, and acted as assistant superintendent to the superintendent Kessler. The plaintiff was well acquainted with the steam-engines, the manner of operating them, the engine-room and the arrangement thereof.

After the belt was relaced and placed in proper position, the engineer was at the starting wheel at the west end of the engines; near him stood the master-mechanic; six or seven feet from the engineer's place stood the superintendent Kessler, and Crosby stood three or four feet further back in the doorway. The master-mechanic, whose duty it was to direct when the engine should be started, told the engineer to start it up, and in a few seconds it was started. At this time the plaintiff was at the east end of the engine-room, where he had gone to see if the wheel-pit was clear, and was standing near the southeast corner of the wheel-pit,

in close proximity to the south engine, looking down into the wheel-pit; as he stood thus, with his left arm hanging down, the engine was started and the crank-shaft was forced against the arm, which was injured so that it had to be amputated. While it was the immediate duty of the master-mechanic and engineer to see that the fly-wheel and pit were clear, an examination for this purpose was within the duty of the plaintiff. When the engine started, neither Crosby, Kessler, or any of the other employees knew in fact that the plaintiff was in a place of danger, and the plaintiff in the situation in which he was could not have been seen by Crosby, Kessler, Hewson or Fisher. The plaintiff did not know the engine was to start.

This action is brought by the plaintiff to recover damages for the injury thus received by him.

According to the plaintiff's claim, the statements in the complaint are broad enough to cover two grounds of negligence : first, negligence in not giving notice or warning to the plaintiff that the engine was about to start, he then being engaged in making an examination about the base of the engine in obedience to a specific direction given him by the defendant, and in starting the engine without giving such notice or warning ; second, negligence in starting the engine without notice or warning to the plaintiff while he, in the fulfillment of his duties, was making an examination about its base.

Upon the trial the facts above mentioned were substantially conceded. Other facts, material to the proof of one or both grounds of negligence, were contested; and as especially bearing on the second ground of negligence, the fact of actual negligent conduct in the plaintiff, the engineer, the master-mechanic, the superintendent, the general-manager, and each of them, was contested. Both sides presented the court with written requests to charge. After the jury had returned a verdict for the plaintiff, the defendant moved the court to set aside the verdict as against the evidence, and to grant a new trial. This motion was denied.

The defendant's appeal assigns error in the court's denial

of each of the defendant's requests to charge, and in charging as it did in the several particulars; in refusing to admit certain evidence; and in denying the motion for a new trial.

*Charles E. Perkins* and *Warren B. Johnson*, for the appellant (defendant).

*William F. Henney* and *Joseph P. Tuttle*, for the appellee (plaintiff).

HAMERSLEY, J.  We think the court erred in its instructions to the jury as to the second ground of negligence, which the jury were bound to follow in case they should find the first ground not proven and the second ground proven.

In respect to the first ground, the plaintiff claimed to have proved that the defendant corporation had given to its general-manager, Crosby, the charge of its factory, with supreme authority relating to the manufacturing, and that when he was present he was the representative of the corporation.  This claim the defendant denied.  The plaintiff also claimed to have proved that Crosby sent him to the east end of the engine-room to see that there were no obstructions in the wheel-pit, which might be a place of imminent danger the moment the engine started, and that, notwithstanding this, Crosby permitted the engine to be started without notice to the plaintiff.  This claim the defendant denied.  The court charged the jury that if the plaintiff established these evidential claims it was the defendant's duty, acting through its representative Crosby, to have given the plaintiff notice that the engine was about to start, before it was started, and reasonable opportunity to leave his place of danger, and that this duty must be performed in fact.

In such a case the failure to give notice in fact might not unreasonably be considered as negligence.

But the second ground of negligence, as claimed by the

plaintiff, eliminates the element of specific direction and bases the alleged negligence upon the fact that while the plaintiff, acting within the line of his duty as an employee, stood in close proximity to the engine in such a position that if the engine was started injury to him would most likely follow, the defendant's servants, namely, the engineer, master-mechanic and superintendent, started the engine without notice or warning to the plaintiff. This fact was an uncontradicted fact. The fact that the plaintiff did not know that the engine was to start while he was standing in the position assumed by him, that the plaintiff in the situation in which he was could not have been seen by the defendant's servants charged with the duty of starting the engine, and that no one of these servants knew in fact that the plaintiff was in a place of danger when the engine was started, were also uncontradicted facts. But whether or not the plaintiff, although acting within the line of his duty in looking into the wheel-pit, was himself negligent in taking the position he assumed for that purpose, and whether or not the defendant's other servants at the time of starting the engine had reasonable ground to apprehend that the plaintiff or some other employee might be in a position of danger, and in starting the engine failed to exercise ordinary care under all the circumstances of the case, were the subject of conflicting evidence and conflicting claims of proof. In order to test the correctness of the charge, we must assume that the plaintiff failed to establish his first ground of negligence, namely, a specific direction to the plaintiff by his master's representative. Assuming this, it seems manifest, in view of the state of facts and claims appearing in the record, that the plaintiff, in order to recover upon his second ground of negligence, must first establish the proposition of law that the duty of exercising ordinary care in starting the engine, under the circumstances detailed, is one included in the general duty of a master to exercise reasonable care to provide for his servants a reasonably safe place in which to work, as distinguished from the duty of a servant to use ordinary care

in the operation of machinery and use of a workshop which are reasonably safe when such ordinary care is used ; and second, must establish the fact that the servants of the defendant, in starting the engine under the circumstances of the case, did not exercise ordinary care.

Assuming that the court was correct in charging the jury that the plaintiff had established his proposition of law, it is plain that the case then turned upon the plaintiff's satisfying the jury that the defendant's servants did not exercise ordinary care in starting the engine. There was no claim that the engineer acted carelessly in the manner of starting the engine. It was uncontradicted that the engine was not started until the master-mechanic, acting in the line of his duty, told the engineer to start, and that all was right. It was uncontradicted that no one of the employees knew in fact that the plaintiff was in a place of danger. There was, however, conflicting evidence and claims as to whether Crosby, the engineer and the other employees had reasonable ground to apprehend that the plaintiff or any employee present was in a position where he might be injured if the engine was started. The existence or non-existence of this fact, therefore, became an important element in determining whether or not the defendant had exercised that reasonable care in the performance of a master's duty which the court in general terms correctly told the jury was the standard of defendant's duty. The defendant claimed that its employees did not know of the plaintiff's position of danger and had no reasonable ground to suppose that he was in any position of danger ; but the charge ignores the significance of that fact, if the jury should find it proved, although the attention of the court is directly called to it in the requests of the defendant to charge. The court tells the jury that the duty which devolved upon the defendant master in performance of its obligation to keep the place reasonably safe for its servant, the plaintiff, to work in, was " the giving of the plaintiff notice, and a reasonable opportunity to get to a place of safety before starting the engine." It tells them that in

this case, if they find that the plaintiff in the performance of his duty " was placed in a position of danger from the starting of the engine, it was the defendant's duty to have given him notice that the engine was about to start before it was started, and reasonable opportunity given him to leave his place of danger ; " that this is a master's duty, and the law requires that it shall be performed in fact. The court further says that if the jury find that without fault on his part the plaintiff, " in the proper performance of his own duties, was engaged in examining the east half of the fly-wheel bed to see if it was free and clear of obstructions, and while so engaged the engine, which had been shut down to enable necessary repairs to be made, was started up by the engineer, by order of the superintendent or master-mechanic of the defendant's factory, and without notice to the plaintiff that the engine was about to start, and without giving him a reasonable opportunity to get to a place of safety, and by reason of such starting of the engine the crank-shaft hit the plaintiff's arm and caused the injuries for which he sues, then if you so find, I charge you that it was the defendant's duty to see that the plaintiff was notified before the engine was started, and given reasonable opportunity to have gotten to a place of safety."

In thus making the conceded fact that the engine was started without notice to the plaintiff, serve as a special definition (applicable to the facts of this case) of a master's general duty to provide for his workmen a safe place in which to work, and as the test of the use of ordinary care by the workmen in performing their master's duty, the charge is plainly defective. The defendant, if liable at all on this ground of negligence, was liable because its workmen had been guilty of negligent conduct in the execution of their master's duty. In such case there can be no negligent conduct when the person charged with misconduct has exercised ordinary care under all the circumstances of the case ; the failure to exercise such care is the very delict charged. Whether or not the plaintiff has established

this essential fact is a question for the jury. This question of fact was not properly submitted to the jury. The charge as given omitted reference to the defendant's claim that the evidence proved that its servants, the engineer, superintendent and master-mechanic, did in fact use ordinary care in starting the engine, and might lead the jury to believe that under the instructions of the court they were bound to find negligent conduct in the defendant's servants and the consequent liability of the defendant, if they believed the conceded fact that the engine was started without giving notice to the plaintiff; notwithstanding they should also be satisfied by the evidence that these servants, when they started the engine, not only were ignorant that the plaintiff was then in fact in a place of danger, but had no reasonable ground to suppose that he might be in any place which would be rendered unsafe through starting the engine. Even if this instruction could be regarded as an indirect expression of opinion, within the discretion of the court, as to the weight of evidence upon the controlling fact in issue, it was incorrect, because that fact was not left to the jury.

As this error in the charge requires the granting of a new trial, we do not deem it necessary to discuss in detail the other exceptions taken in the appeal. They are either plainly not well taken, or present a question which, if it arises at all upon another trial, is likely to arise under conditions so different that its discussion now is inadvisable.

The court did not err in construing the complaint as alleging the two grounds of negligence which were submitted to the jury.

The claim of a fatal variance between the material facts alleged and those proved is unwarranted.

The rulings on evidence of which the defendant complains do not furnish ground for a new trial.

The court did not err in denying the motion to set aside the verdict as against the evidence.

There is error in the judgment of the Superior Court

and the cause is remanded for further proceedings accord-
ing to law.

In this opinion the other judges concurred.